**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYNTHIA MANDERACH** | : | **CIVIL ACTION** |
| **ORGANTINI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 06-02213** |
| | : | |
| | : | |
| **METHACTON SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                   **February 6, 2008**

Cynthia Organtini, a former cafeteria employee of the Methacton School District, brought this employment action against Methacton and certain of its employees. The defendants moved for summary judgment. After hearing oral argument on the defendants' motions, and for the reasons outlined below, I will grant summary judgment on all counts, dismissing the plaintiff's complaint.

**I.     BACKGROUND**

Cynthia Organtini claims that her termination from employment at the Methacton School District violated her Fourteenth Amendment procedural and substantive due process rights, and that Methacton officials hurt her reputation by acts of slander during and after her termination. Organtini was an employee of Methacton for a total of eleven (11) years. She was hired in 1994 as a general helper, and worked as a cashier at the

Arcola Intermediate School from 1995 until 1999.  In 1999, Organtini became the assistant cook at the Methacton High School ("MHS"), and shortly thereafter became the MHS cafeteria manager, the position she held through the events of April-June of 2005, which spawned this litigation.

As part of her position as cafeteria manager, plaintiff was responsible for handling cafeteria money, including both bank deposits and petty cash.  Ms. Organtini claims to have repeatedly expressed concern over the security of the cafeteria money, asking her supervisor, Todd Holmes, to purchase a safe, and suggesting that the locks on the cafeteria office doors be changed.  The parties dispute the actions taken in response to these concerns, and the forcefulness of the plaintiff's efforts to boost security.

On April 26, 2005, Ms. Organitini discovered that approximately $500 was missing from the MHS cafeteria manager's office.  The next day, Ms. Organtini's supervisor, Paula Germinario, issued a "written warning" admonishing Ms. Organtini for leaving money unattended in her unlocked office and informing her that future incidents of the kind could lead to "further disciplinary action up to and including termination." (Def. Ex. A, p. 62, deposition Ex. 4.)

Several further incidents of theft followed in the next two months.  On May 26, 2005, Ms. Organtini reported that approximately $100 of "petty cash" was missing from her office.  On June 6, 2005, $260 in "starter roll money" was taken from a cashier's bag. And, finally, on June 9, 2005, a bank deposit bag containing over $2,300 was stolen from

Organtini's desk drawer.

Prior to the June 9, 2005 incident, MHS had issued a directive changing the money safeguarding procedures, requiring plaintiff to bring the cafeteria money to the School District's central administration office in the Farina Building.  Following the last incident on June 9, 2005, Organtini was suspended for the remainder of the school year (3 days) with pay, and escorted out of the building by Germinario and possibly other administrative officials.[1]

Organtini has never been accused of committing any of the thefts.  In her statement of facts, she avers that the Facility Supervisor, Dennis McCall, told her that if a thief was not found, the school would assume that Organtini stole the money.  After Organtini left the building on June 9, 2005, she claims that defendant Dr. Jeffrey Miller, the Superintendent of Methacton, insinuated that Organtini was responsible for the thefts.  Miller was allegedly confronted by co-workers of the plaintiff and questioned about unfair treatment.  In reply, Miller asked the other employees, "How do you know it's not Cindy?"  Organtini also claims that defendant Elizabeth Whalen (a co-worker) "disseminated false accusations against Plaintiff's character, telling fellow employees that Plaintiff was being investigated by the school District and that Plaintiff often left money laying around the office."

On June 10, 2005, Miller sent a letter to Organtini, informing her of her right to a

---

[1]Organtini claims she was escorted by "administrative officials while the Pennsylvania State Police were present in the cafeteria area."

3

hearing.  Organtini replied requesting a hearing, which was set for August 25, 2005.

According to the defendants' Statement of Undisputed Facts, Organtini met with Miller

on June 14, 2005, to discuss the reasons for her suspension.  That meeting is referenced in

a letter from Miller to Organtini dated June 23, 2005, which was written in response to

her June 22, 2005 letter (through counsel) requesting a hearing on termination.  After a

series of communications between plaintiff's counsel and Methacton (through its

solicitor, Charles Sweet), Methacton sent a letter on July 11, 2005, offering "in lieu of a

dismissal" to transfer Organtini to the position of Elementary Cafeteria Manager at the

Audubon Elementary School.  Organtini rejected this position, due to a longstanding

physical condition, fibromyalgia, that prevented her from performing the functions of the

job.  Methacton then sent Organtini a letter informing her that the August 25, 2005

hearing on termination would be cancelled and that Miller would recommend to the

Board of School Directors that Organtini be demoted and transferred to a cashier's

position at the Arcola School cafeteria.  The Board voted to act on Miller's

recommendation on August 23, 2005, at a public meeting, and Miller sent a letter

informing Organtini of the decision on August 24, 2005.

Ms. Organtini never reported to the job at Arcola.  According to the plaintiff, this

position was not only a demotion, but under the school's collective bargaining agreement

("CBA") it was a union position, which had to be filled on the basis of seniority in the

union.  Ms. Organtini did have seniority at the time.  Ms. Organtini protested her transfer

4

in a letter through counsel and requested a "full hearing before the Board to properly determine [her] employment status with the Methacton School District." Methacton responded that Organtini was not entitled to a hearing under the School Code because she had not been terminated. On September 27, 2005, the Board terminated Organtini from the Arcola position for abandoning her duties. Ms. Organtini does not dispute the grounds for her September 27, 2005 termination from the Arcola position.

The complaint contains four counts: (1) a 42 U.S.C. § 1983 claim against Methacton and Miller for infringing upon her procedural due process rights by denying her a hearing upon her removal as cafeteria manager; (2) a § 1983 claim against Methacton and Miller for denying her substantive due process under the theory of a state created danger; (3) a Pennsylvania state law defamation claim against Miller;[2] (4) a Pennsylvania state law defamation claim against Elizabeth Whalen.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v.

---

[2]Count III originally also charged the School District with defamation. That claim was dismissed by the late Judge Green (Document #16), because Methacton enjoys statutory immunity from defamation claims under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"). 42 Pa. C.S. § 8541.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of

material fact, then the court cannot credit the movant's version of events against the

opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363

(3d Cir. 1992).

## IV.   DISCUSSION

The plaintiff has failed to raise a genuine issue of material fact as to the nature of

her termination from the School District.  Ms. Organtini claims that her transfer, first to a

position which she was physically unable to perform, then to a union position which she

was allegedly not qualified to occupy, amounts to an intentional, constructive firing.  The

defendants contest this assertion, contending that Organtini was transferred to a new

position and not "removed" in any sense that would entitle her to a hearing.  Organtini

cites no legal definition of constructive discharge, nor any objective test for determining

if a constructive discharge has occurred.[3]  The Third Circuit set forth the contours of a

constructive discharge claim under the due process clause in Rusnak v. Williams, 44 Fed.

Appx. 555, 558 (3d Cir. 2002) (citing Leheny v. City of Pittsburgh, 183 F.3d 220 (3d Cir.

1999)):

> Employee resignations and retirements are presumed to be voluntary. This
> presumption remains intact until the employee presents evidence to
> establish that the resignation or retirement was involuntarily procured. If an

---

[3]The plaintiff has not directed the Court to a single case discussing the possibility that a "transfer" constitutes a "termination" for due process purposes.  In general, her property interest theory requires speculation beyond reasonable inferences from the facts presented to survive summary judgment.

> employee retires of his own free will, even though prompted to do so by
> some action of his employer, he is deemed to have relinquished his property
> interest in his continued employment for the government, and cannot
> contend that he was deprived of his due process rights.

183 F.3d at 227-228 [internal citations omitted].  The court then set out the test for

involuntary discharge established in Leheny:

> [T]here appear to be two circumstances in which an employee's resignation
> or retirement will be deemed involuntary for due process purposes: (1)
> when the employer forces the resignation or retirement by coercion or
> duress, or (2) when the employer obtains the resignation or retirement by
> deceiving or misrepresenting a material fact to the employee.

44 Fed. Appx. at 558 (citing Leheny, 183 F.3d at 228).  Neither of these situations has

occurred in this case.

Ms. Organtini has not come forward with specific facts to establish either coercion

or misrepresentation.  According to Organtini, the School District first offered her a job

she could not accept due to a physical condition barring strenuous activity, then offered

her another job at Arcola that would not require heavy lifting, but which she allegedly

could not accept under the school's collective bargaining agreement ("CBA").  At the

time of her appointment to the Arcola position, Ms. Organtini was not a member of the

Bargaining Unit that includes employees of the kitchens or cafeterias within the

Methacton School District; as a manager at MHS, she could not belong to a Bargaining

Unit.  Under the CBA, the Arcola position must be filled based on seniority within the

Bargaining Unit.  Organtini maintains that because she did not have union seniority to

qualify over members of the Bargaining Unit for the position at Arcola, she could not

8

accept the position.  (See Pl. Ex. M, at 25-26.)  She asserts that the composite of these placement decisions by the Board operated as a "veiled dismissal."  Organtini's argument concerning the second placement, however, is not grounded in the terms of the CBA itself (which she has not produced), and calls for speculation beyond reasonable inferences from the facts.

Typically, if an employer violates the terms of a CBA, the union is required to take appropriate action.  See Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 329 (1969) (stating the general rule that a plaintiff employee must exhaust his or her remedies under a CBA); Wilkins v. ABF Freight Sys., 2005 U.S. Dist. LEXIS 20305 (E.D. Pa. Sept. 15, 2005) ("Ordinarily, suits against an employer for violation of the CBA, pursuant to § 301 (29 U.S.C.S. § 185) of the Labor Management Relations Act, 29 U.S.C.S. § 141 et seq., are brought together with an allegation against the representing union for breach of the duty of fair representation").  In Pennsylvania, "a *union* employee cannot state a claim for wrongful termination or breach of the CBA against an employer."  Phillips v. Babcock & Wilcox, 349 Pa. Super. 351, 355, 503 A.2d 36, 38 (1986), appeal denied, 514 Pa. 618, 521 A.2d 933 (1987) (action for wrongful discharge available only when employment at will) (emphasis added).  As a *non-union* employee, Ms. Organtini fails to invoke any right or obligation, under the CBA or elsewhere, that would require her to decline the position at Arcola.  To assume under these facts that the appointment amounted to misrepresentation or coercion on the part of the Board would extend well beyond the

bounds of reasonable inference.  Ms. Organtini has not met her burden of coming forward with facts from the record to show that her claim has any legal merit.  Therefore, under Celotex, the question of whether Organtini's transfer constitutes a termination must be resolved in favor of the defendants.  See Celotex Corp. v. Catrett, 477 U.S. at 322.

A.      Count 1: Denial of Hearing upon Removal (§ 1983 Procedural Due Process–Methacton and Miller)

In Count I, the plaintiff claims that the events of June-July 2005 constitute a termination from her position as cafeteria manager, which entitled her to a hearing under the procedural arm of the due process clause in light of her property interest in continued employment.  Alternatively, citing Local Agency Law Section 553, the plaintiff argues that even for a demotion, she was entitled to a hearing.  The plaintiff also claims that the damage to her reputation caused by the circumstances of her alleged termination, coupled with the loss of her purported property interest in continued employment, violates her liberty interest in her reputation.  The plaintiff has no factual support, nor can she meet the requirements of the "stigma-plus" test.  I will therefore grant the defendants' motion for summary judgment as to Count I of the Complaint.

1.      *Property Interest*

Procedural due process claims, to be valid, must allege state-sponsored deprivation of a protected interest in life, liberty or property.  See Zinermon v. Burch, 494 U.S. 113, 125 (1989).  If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable

opportunity to be heard. Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). The Supreme Court has determined that a public employee has a protected property interest in continued employment by the government. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-548. Property interests arise only from state law. Poteat v. Harrisburg School District, 33 F. Supp. 2d 384, 390 (M.D. Pa. 1999) (citing Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 92 (3d Cir. 1998). There is no general property right in continued public employment in Pennsylvania absent a contractual or statutory right. See Werner v. Zazyczny, 681 A.2d 1331, 1336 (Pa. 1996).

Organtini cites two statutory bases to establish her property right and entitlement to a hearing: (1) Section 514 of the Public School Code; (2) Section 553 of Local Agency Law. I find that neither creates a property interest for the plaintiff.

a)    *Public School Code Section 514*

Section 514 of the Public School Code of 1949[4] grants the right to a hearing to nonprofessional employees prior to termination. See 24 P.S. § 5-514. The relevant portion of the Public School Code provides:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefore and after hearing if demanded, have the right at any time to remove any of its

---

[4]Act 14 of March 10, 1949, P.L. 30, as amended, 24 P.S. § 1-101 et seq. ("Public School Code").

officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth or other improper conduct.

24 P.S. § 5-514.  From the plain language of Section 514, it is clear that a hearing is not available in cases of transfer or demotion; the hearing right is triggered only by removal. See Moriarta v. State College Area School District, 601 A.2d 872, 873 (Pa. Cmwlth. 1992) ("[t]he word 'removal' means discharge or dismissal . . ."); Miller v. Quakertown Community School District, 18 Pa. D. & C.3d 416, 419-420 (Bucks County CCP 1981) (Section 514 "refers to the removal (dismissal) of a nonprofessional employee and not to the demotion of such an employee").[5]

　　　　　The plaintiff claims there is a material issue of fact as to whether she was terminated or transferred from her position as cafeteria manager.  She claims that the June 10, 2005 letter informing her that the administration would recommend her removal to the Board, and her subsequent request for a hearing, evidence an intent to remove on the part of Methacton that continued through the decision to transfer her to the cashier position at Arcola.  That intent was carried out, Organtini claims, when the School District offered her two positions which the administration allegedly knew she could not accept.  I find

----

[5]Defendants point out, and plaintiff does not rebut in her brief, that *professional* employees are granted a right to a hearing on demotion or transfer under Section 1151 of the Public School Code.  A "professional employee" must be certified; nowhere in either Section 1101 of the Public School Code (defining "professional employee") or the Pennsylvania Department of Education regulations is a cafeteria manager identified as a "professional employee."  (See Def. Br. at 5-6.)  Section 514 confers this hearing right only in cases of removal, as discussed above.  Therefore, in order to claim a property interest created by the Public School Code, the plaintiff must argue that she was removed.

12

the plaintiff's version of the facts unpersuasive and speculative.  Her theory is that she was denied a hearing in this roundabout way (i.e. by being transferred in lieu of outright removal) because the defendants "did not want the school board and the community to know that Methacton had a thief working in the school."  By taking this position, Organtini contradicts herself, simultaneously arguing that School District officials brazenly and publicly escorted her out of the building on the day of the fourth incident of theft, insinuating in no subtle way that *she* was a thief working in the school.  In short, Section 514 of the Public School Code provides no property interest in continued employment requiring a procedural due process hearing where Organtini, a nonprofessional, was demoted and transferred to another position.  She has failed to make any showing that this offer of another position was "removal."  Her invitation to speculate or extrapolate from the facts is not the kind of evidence Ms. Organtini must show under Rule 56 and Celotex to defeat a summary judgment motion.  See Celotex, 477 U.S. at 322.

b)      *Local Agency Law*

The plaintiff rests her alternative property interest argument on Local Agency Law Section 553,[6] which reads, in pertinent part: "No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."  The question raised in this case is whether or not Organtini's

_____

[6]2 Pa. C.S.A. § 553.

transfer/demotion constitutes an "adjudication"[7] under Local Agency Law.  If it does, then Section 553 would provide the statutory property interest in Organtini's employment necessary to make out a procedural due process claim for denial of a hearing.  No question of material fact exists for a jury in determining whether a property interest exists under Section 553.  I make this finding after a review of <u>Miller v. Quakertown Community School District</u>, 18 Pa. D. & C.3d 416, 419-420 (Bucks County CCP 1981), which held that a demotion may constitute an "adjudication" in certain circumstances.

In <u>Miller</u>, the Court of Common Pleas of Bucks County held that a demotion involving a 60% reduction in salary should be considered an "adjudication," subject to the hearing requirement of the Local Agency Law.  <u>Id.</u> at 420 (holding that "appellant was not properly demoted until after a hearing pursuant to section 553 of the Local Agency Law).  It is important to note that the defendant in <u>Miller</u> had already stipulated to damages in anticipation of this result and had acknowledged that a hearing ought to be provided.  <u>Id.</u>  The language of this 1981 opinion specifically limits its holding to "this particular demotion."  <u>Id.</u>  Moreover, defendants present a persuasive argument that the Pennsylvania Supreme Court's opinion in <u>Werner v. Zazyczny</u>, 681 A.2d 1331 (Pa. 1996)

---

[7]Under Pennsylvania law, an "adjudication" is defined in relevant part as:
> "[A]ny final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities, or obligations of any or all of the parties to the proceedings in which the adjudication is made."

2 Pa. Cons. Stat. § 101.  <u>See</u> <u>Werner v. Zazyczny</u>, 681 A.2d 1331, 1335 (Pa. 1996).

further undermines the holding in <u>Miller</u>.[8]  I find that the <u>Miller</u> case should not govern the Court's holding on this motion for summary judgment.  Pennsylvania's Local Agency Law does not provide the statutory basis for requiring a hearing upon demotion of a nonprofessional government employee.

Additionally, the facts averred by the plaintiff do not echo the severity in reduction of pay and benefits presented to the court in <u>Miller</u>.  The plaintiff in this case cannot point to specific facts in the record that show a reduction of pay and benefits equaling, or even approaching, the gravity of diminution in compensation displayed in <u>Miller</u>.

I will therefore grant summary judgment and dismiss Organtini's procedural due process claim for denial of a hearing.

### 2. *Liberty Interest*

I will likewise grant summary judgment and dismiss the plaintiff's procedural due process claim based on deprivation of her liberty interest in reputation.  "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  <u>Paul v.</u>

---

[8]The court in <u>Werner</u> held that a non-union, non-civil service government employee is an at-will employee, and holds a property right in his employment only "where he can establish a legitimate expectation of continued employment through either a contract or a statute."  681 A.2d at 1336 (denying plaintiff a removal hearing because he could identify no contractual or statutory grant of rights).  The defendants' argument in the present case is that this holding makes the conclusion in <u>Miller</u> impossible, because the plaintiff in <u>Miller</u>, like Organtini, could point to no contract or statute granting him rights upon demotion or transfer.  The plaintiff attempts to distinguish <u>Werner</u> as involving Administrative Agency Law and not Local Agency Law, but as defendants argue, the two schemes share common definitions, including the definition of "adjudication."  2 Pa. Cons. Stat. § 101.

<u>Davis</u>, 424 U.S. 693, 701 (1976); <u>see</u> also <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006).  This requirement is known as the "stigma-plus" test.  In <u>Hill</u>, the Third Circuit stated that in the public employment context, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" <u>Hill</u>, 455 F.3d at 236.  To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statements: (1) were made publicly; and (2) were false.  <u>Id.</u>  To satisfy the "plus" prong of the test, the Third Circuit in <u>Hill</u> explained that Supreme Court precedent is less than clear on the appropriate standard; however, termination is sufficient.  <u>Id.</u>  The defendants cite precedent from the D.C. Circuit Court of Appeals finding that a demotion in position of public employment is insufficient to satisfy the "stigma-plus" test.  <u>O'Donnell v. Barry</u>, 148 F.3d 1126, 1141 (D.C. Cir. 1998).  However, in the same case the D.C. Circuit affirms its previous holding that a demotion and reduction in pay *may* indeed satisfy the "plus" prong of the test.[9]  I find that plaintiff has failed to satisfy either prong of the test.

a)      *"Stigma"*

To establish "stigma," the plaintiff points to (1) Dennis McCall's statement to her that if a thief was not identified, she was a suspect, (2) the manner in which she was

_____

[9]"This circuit has since [<u>Davis</u>] said that a demotion may also suffice to trigger a due process claim. 'For a defamation to give rise to a right to procedural due process, it is necessary--we need not say when it is sufficient--that the defamation be accompanied by a discharge from government employment or at least a demotion in rank and pay." <u>O'Donnell v. Barry</u>, 148 F.3d at 1141 (citing <u>Mosrie v. Barry</u>, 718 F.2d 1151, 1161 (D.C. Cir. 1983)).

16

escorted to her car on the day of the fourth incident, and (3) defendant Miller's comment, "How do you know it's not Cindy?" on the same day to Organtini's co-workers.

The defendants counter that there is no connection between these communications and her actual termination date of September 27, 2005 (following her failure to report to her position at Arcola). The "stigma-plus" test, they assert, requires a nexus between the "plus" (termination, and maybe demotion with reduction in pay) and the "stigma" (defamatory statements). At the time of the events described in the plaintiff's brief, she was suspended without pay, which the Third Circuit has deemed insufficient to trigger procedural due process protection. Edwards v. California University of Pennsylvania, 156 F.3d 488, 492 (3d Cir. 1998) (dismissing a "stigma-plus" claim based on suspension without pay). Defendants also point out that the Third Circuit has gone no further than identifying termination as sufficient to trigger a liberty interest under the due process clause, not demotion or transfer. See Hill, 455 F.3d at 236.[10]

I find that summary judgment is proper on this prong alone for two reasons: (1) the plaintiff has failed to raise a genuine issue as to the defamatory nature of the acts in

_____

[10]The School District's actions do not constitute a termination. While Organtini does refer in her brief to the Hill court's determination that defamation in the course of a "constructive discharge" satisfies the stigma-plus test, she presents nothing more than hyperbolic restatements of the facts to support a claim of constructive discharge (e.g. referring the court to the "incredibly suspect transfer opportunities given to plaintiff by defendants"). To consider the School District's actions to be a termination, the court would have to accept the plaintiff's sinister overlay on an uncomplicated transfer of job responsibilities.

17

question; they are not defamatory as a matter of law;[11] (2) if the alleged communications were sufficient to satisfy the "stigma" portion of the test, there is no connection between the statements and the plaintiff's termination.

   b) "Plus"

The plaintiff has not shown, as a matter of law, that the action taken to demote/transfer her to the position of cashier at Arcola triggered a liberty interest under due process jurisprudence.  The plaintiff has failed to demonstrate that she was constructively discharged, which would permit her some hope of satisfying this prong of the test in light of Hill.  See Hill, 455 F.3d at 238 (constructive discharge raises a liberty interest, even where, as a matter of state law, the plaintiff lacks a property interest in the

---

[11]The first statement was not "published;" the act of escorting Organtini to the parking lot was not a "statement;" and Dr. Miller's comment was not defamatory.  (See Def. Br. at 13.)  To establish a prima facie case for defamation, the plaintiff must show:

   (1)   defamatory character of the communication
   (2)   publication by the defendant
   (3)   application to the plaintiff
   (4)   understanding by the recipient of its defamatory meaning
   (5)   understanding by the recipient of it as intended to be applied to the plaintiff
   (6)   special harm resulting to the plaintiff from its publication
   (7)   abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a).  Miller's statements were not defamatory in meaning (elements 1 and 4) because the evidence on the record shows that the witnesses to whom the statements were published did not consider the contents of the statements to be true, nor did the statements negatively impact their respective opinions of Organtini.  In order for a communication to be defamatory, "it must tend to harm the reputation of another so as to lower her in the estimation of the community or to deter third persons from associating or dealing with her."  Feldman v. Lafayette Green Condominium Assoc., 806 A.2d 497, 500 (Pa. Cmwlth. 2002).  Organtini fails to present evidence beyond bald assertions that Dr. Miller's statements were defamatory under this definition.

job she or he lost).  I will, therefore, dismiss the plaintiff's due process claim for failure to satisfy either prong of the "stigma-plus" test.

### 3.     Immunity (Miller) and Policy or Practice Requirement (Methacton)

#### a)     Miller

Dr. Jeffrey Miller, the Superintendent claims qualified immunity as to Organtini's federal constitutional claims.  The doctrine of qualified immunity provides government officials performing discretionary functions with immunity from suit insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Because I have dismissed Organtini's federal claims on the merits, I also agree with the defendants that no "clearly established statutory or constitutional rights" were ever violated by Organtini's transfer/demotion, meaning that no reasonable person would have known of such a violation.  Therefore, I agree that Dr. Miller should enjoy qualified immunity as the superintendent of Methacton.

#### b)     Methacton

Defendant Methacton argues that Organtini's federal claims must be dismissed because she has not established that a "policy, practice or custom" of the School District deprived her of any constitutional rights.  See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 (1978).  Organtini argues that her claims are not subject to the "policy, practice or custom" requirement established in Monell, because that case

19

discussed the absence of *respondeat superior* liability for municipal entities, and her claim is brought directly against the School District for its own actions.  See Owen v. City of Independence, Missouri, 455 U.S. 622 (1980) (no immunity from suit for municipalities);[12] Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 478 (3d Cir. 2003) (municipality may be held liable for substantive due process violations, even where none of its employees is liable).  A municipality may be held liable if its policy or practice is the "moving force" behind the constitutional violation.  Id. at 400; see also Sanford v. Stiles, 456 F.3d 298, 314 (2006) (stressing that "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights"), Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (stating that the municipality itself must be the "wrongdoer").  Additionally, as the Third Circuit held in Sanford, Organtini must show that the municipality acted with "deliberate indifference" toward her rights in order for municipal liability to attach.  Sanford, 456 F.3d at 314; see also Brown, 318 F.3d at 479 ("[T]he Supreme Court has instructed that 'deliberate indifference' is the necessary standard in order to establish § 1983 liability of a municipality.")

In this case, I find the School District's Monell argument to be consistent with the Third Circuit's ruling in Sanford v. Stiles, 456 F.3d 298 (2006).  First, I have rejected

---

[12]The plaintiff seems to misinterpret the defendants' argument on this question as a claim to immunity, which it is not.  Methacton argues, rather, that Organtini must first establish that the actions were taken according to a policy or practice officially adopted by the school.

Organtini's constitutional claims on the merits, making her argument for liability untenable under Brown and progeny.  Second, Organtini has not come forward with any evidence of a school policy responsible for the harm she alleges, nor has she established that the School District's actions were taken with "deliberate indifference" toward her rights.  On the contrary, the evidence of record reflects the School District's efforts to accommodate Organtini by offering her a cashier's position at Arcola, when her physical condition prevented her from taking the manager position at Audubon Elementary.

B.      Count II: State-Created Danger (§ 1983 Substantive Due Process–Methacton and Miller)

1.      *State-Created Danger*

The "state-created danger" doctrine is an exception to the general rule that the government has no duty to provide citizens with assistance.  In DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189 (1989), the United States Supreme Court held that only "in certain limited circumstances [does] the Constitution impose[] upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 198.  The Third Circuit has recognized two exceptions to the general no duty rule: (1) where there exists a "special relationship" between the state and an individual and (2) where the state has created a danger that causes harm to an individual.  Brown, 318 F.3d at 478.

The second exception is the "state-created danger" exception and it requires proof of four elements:

(1)    the harm ultimately caused was foreseeable and fairly direct;

(2)    a state actor acted with a degree of culpability that shocks the conscience;

(3)    a relationship existed between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts; and

(4)    the state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered that citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006).  However, as a prerequisite to bringing any Section 1983 action, including a substantive due process claim based on the "state-created danger" doctrine, the plaintiff bears the burden of establishing that there has been a deprivation of a constitutional right.  Rivas v. City of Passaic, 365 F.3d 181, 193-94 (3d Cir. 2004).  She cannot do so.

Citing the First Amendment alone, and no case law, Organtini asserts that the defendant's alleged failure to provide security measures in the cafeteria at Methacton High School led to the plaintiff being accused of theft and "ostracized by her community," violating her First Amendment right to free association.  I find this argument utterly without merit and unsupported by First Amendment case law.  Further, it should be noted that, under Hill, "public employment is not a fundamental right entitled to substantive due process protection."  Hill, 455 F.3d 225, 235 n.12.  I will therefore dismiss her "state-created danger" claim as a matter of law.

### 2.    *Immunity (Miller) and Policy or Practice Requirement (Methacton)*

As discussed above, in Section B(3), notwithstanding the viability of Organtini's claims on the merits, it is clear that Miller enjoys qualified immunity, and that Organtini's

22

suit against Methacton would fail under Monell.

      C.    Counts III and IV: Defamation under Pennsylvania Law (Miller and Whalen)

Because I have now dismissed all federal claims in this case, I will decline to exercise this Court's supplemental jurisdiction over Organtini's state law defamation claims, and dismiss them for lack of jurisdiction. Mine Worker v. Gibbs, 383 U.S. 715 (1966) (holding that it is improper for a federal court to retain jurisdiction over a matter which consists of solely state claims). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726-27.

## V.   CONCLUSION

Based on the foregoing, I will dismiss all the claims in the Complaint. An appropriate Order follows.

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYNTHIA MANDERACH** | : | **CIVIL ACTION** |
| **ORGANTINI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 06-2213** |
| | : | |
| | : | |
| **METHACTON SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| **Defendants.** | : | |

## O R D E R

**AND NOW**, this 6th day of February, 2008, upon consideration of the defendants' Motion for Summary Judgment (Docket No. 34), it is hereby **ORDERED** that the motion is **GRANTED** in its entirety.  The plaintiff's claims are accordingly **DISMISSED WITH PREJUDICE**.  The Clerk of the Court is directed to mark this case **CLOSED** for all purposes.

BY THE COURT:


/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.